1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Craig Russell, | No. CV-16-01495-PHX-DLR |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Craig Russell applied for a period of disability, disability insurance benefits, and supplemental security income on September 18, 2012, alleging disability beginning December 31, 2008. After state agency denials, Russell appeared for a hearing before an administrative law judge ("ALJ"). A vocational expert also was present and testified. Following the hearing, the ALJ issued a written decision finding that Russell is not disabled within the meaning of the Social Security Act ("SSA"). The ALJ's decision became the agency's final decision after the Social Security Administration Appeals Council denied Russell's request for review. Russell now seeks judicial review of that decision. For the following reasons, the decision of the Commissioner of Social Security Administration is affirmed.

## **BACKGROUND**

To determine whether a claimant is disabled for purposes of the SAA, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ

determines whether the claimant is engaging in substantial gainful activity. If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ found that Russell meets the insured status requirements of the SSA through September 30, 2014, and that he has not engaged in substantial gainful activity since December 31, 2008. (A.R. 22-23.) At step two, the ALJ found that Russell's affective and substance abuse disorders are severe impairments. (*Id.* at 23.) At step three, the ALJ determined that Russell's impairments meet or equal the severity of listings 12.04 and 12.09. (*Id.* at 24.) The ALJ also found at step three, however, that Russell would not have an impairment that medically meets or equals the severity of a listed impairment if he stopped his substance use. (*Id.* at 25-26.) The ALJ proceeded to complete the sequential analysis, noting at each step that his findings were contingent upon Russell ceasing his substance use. At step four, the ALJ found that:

> [Russell] would have the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [he] is limited to simple work with only incidental social contact.

(*Id.* at 26.) Based on this RFC, the ALJ found that Russell would be unable to perform his past relevant work. (*Id.* at 30.) At step five, however, after considering Russell's age,

education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Russell can perform. (*Id.*) Accordingly, the ALJ concluded that Russell was not disabled within the meaning of the SSA because his substance use is a contributing factor material to the disability determination, and he would not be disabled if he stopped the substance use. (*Id.* at 30-31.)

**STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

**DISCUSSION**

Russell argues that the ALJ improperly found that his: (1) substance use was material to the disability determination; (2) back pain and sleep apnea were not severe; and (3) limitations allowed him to work in jobs with only incidental social contact, without defining the term. (Doc. 9.) Having reviewed the record and the parties' briefs, the Court finds no reversible error.

**I. Substance Use as a Material Contributing Factor**

The ALJ found that Russell's affective and substance abuse disorders were severe, and that while on methamphetamine his impairments met listings 12.04 and 12.09. Because drug abuse cannot be a material factor in the ALJ's disability determination, the

ALJ then re-analyzed Russell's impairments at step three as if he had stopped using methamphetamine. This time, the ALJ concluded that Russell's impairments did not meet or equal a listed impairment. The ALJ also concluded that, if not on drugs, Russell would be able to perform simple work with incidental social contact and that such jobs exist in significant numbers in the national economy.

Agency regulations provide that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). In order "[t]o find that [drug abuse] is material, we must have evidence in the case record demonstrating that any remaining limitations [when not using drugs] were not disabling during the period." SSR 13-2p, 2013 WL 621536, at *12. "Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated." *Id.*

The ALJ highlighted such evidence here. The ALJ separately compared the effects of Russell's symptoms during periods of sobriety and relapse and found that he had fewer and less severe limitations during periods of sobriety. (A.R. at 26.) This finding is supported by substantial evidence. For example, during periods of sobriety Russell's mental status examinations were unremarkable. (*See, e.g.*, *id.* at 319, 325, 329, 432-45, 506-23 (noting that Plaintiff had normal speech and thought process, gave full attention, normal concentration, intact memory, and unimpaired insight and judgment).) In contrast, during a period of relapse, Russell's thought process was disorganized, his insight and judgment were poor, his attention was poor, his mood was "off the wall," and his speech was difficult to understand. (*Id.* at 356-59.) The ALJ reasonably concluded that the notes from periods of sobriety reflect Russell's functioning when not using methamphetamine, while the notes that coincided with Russell's relapse reflect his functioning when he is using the drug. Based on the evidence and the ALJ's sequential

evaluation findings when Russell's substance use was not considered, the ALJ reasonably concluded that Russell's drug use would be material to a finding of disability.

## II. Severity of Sleep Apnea and Back Pain (Disc Disease)

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). Agency regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Russell was diagnosed with sleep apnea in August 2014. (A.R. at 578.) The ALJ found Russell's sleep apnea not severe at step two because Russell admittedly did not comply with his prescribed treatment for the condition. (*Id.* at 23, 43-44.) The ALJ reasonably concluded that Russell would have complied with his prescribed treatment if his sleep apnea was as severely limiting as he alleged. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001).

Regarding his back pain, Russell contends that the ALJ neglected to consider a November 2013 x-ray, which showed "marked" disc disease with grade I-II spondylolisthesis. (A.R. 553.) But the record shows that the ALJ considered the results of this x-ray, as his decision both cites to and quotes from the x-ray results. (A.R. 23.) Notably, the ALJ highlighted language from that x-ray stating, "there is no instability with flexion or extension." (*Id.*) This language served as the basis for the ALJ's finding

that Russell's disc disease was not severely limiting. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (recognizing that an ALJ's interpretation of objective imaging, i.e., an MRI, is a legitimate basis for a nondisability finding). Moreover, Russell fails to connecting the results of his x-ray with limitations on work activities. The Court finds no step two error.

**III. Incidental Social Contact**

Finally, Russell argues that the phrase "incidental social contact" as used in the ALJ's RFC finding is ambiguous. He contends that, without clarity as to the amount of public contact Russell can have, it is not possible to assess what jobs are available to him. The Court disagrees.

The ALJ defined the term "incidental social contact" during the hearing. In his hypothetical posed to the VE, the ALJ asked whether someone limited to work "involving no more than incidental contact," meaning "not much with the public and not having to really interact on any extensive basis with coworkers or supervisors," could perform jobs that exist in the national economy. (A.R. 60.) In response, the VE identified kitchen helper, hand packager, dining room attendant, and housekeeper. (*Id.* at 60-61, 64.) The VE acknowledged that a dining room attendant worked around many people, but explained that "contact with them is just incidental because you're focused on cleaning empty tables." (*Id.* at 62.) The VE also acknowledged that kitchen helpers and hand packagers do not work alone, but explained that these jobs required only incidental contact with others. (*Id.* at 64.) Likewise, housekeepers have "very little contact with others." (*Id.*) Accordingly, the ALJ sufficiently defined "incidental social contact" to properly assess the jobs Russell could perform.

**CONCLUSION**

For the foregoing reasons, the ALJ's decision is free of harmful legal error and supported by substantial evidence.

//

//

- 6 -

**IT IS ORDERED** that the final agency decision is **AFFIRMED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 30th day of September, 2017.

Douglas L. Rayes
United States District Judge